# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ZDENEK SVOBODA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 C 783 |
| | ) | |
| vs. | ) | Judge Lefkow |
| | ) | Magistrate Judge Keys |
| | ) | |
| METROPOLITAN WATER | ) | Jury Demand |
| RECLAMATION DISTRICT OF | ) | |
| GREATER CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, ZDENEK SVOBODA, through counsel, Law Offices of Lawrence V. Jackowiak, respond to Defendant METROPOLITAN WATER RECLAMATION DISTRICT OF GREATER CHICAGO's (the "DISTRICT") Motion to Dismiss as follows:

**INTRODUCTION**

This cause of action is based on an incident that took place on October 25, 2002. In the Complaint, which must be taken as true for purposes of this motion, Plaintiff states that after he was dropped off near his home at 4105 North McVicker, Chicago an oral exchange and conflict arose between Plaintiff, his friend Pavel Belocky and Officer OSOWSKI about litter that Pavel Belocky had allegedly put on the ground. At this time, officer OSOWSKI was a police officer employed by the DISTRICT.[1]

During the conflict, Officer OSOWSKI told Plaintiff that he was a police officer. (Complaint at ¶ 10.) To prove that he was an officer, OSOWSKI showed the Plaintiff his badge, which was clipped to his belt. (¶ 11.) The oral exchange turned into a physical confrontation during which OSOWSKI first pepper-sprayed both Plaintiff and Pavel Belocky, and then he pulled out a gun and shot Plaintiff.

Officer OSOWSKI reported the incident to the Chicago Police, and signed felony

---

[1] The DISTRICT contends that at the relevant time, Officer OSOWSKI was both off-duty and on vacation. However, this is not alleged in Plaintiff's amended complaint, and should not be considered.

complaints against ZDENEK SVOBODA and Pavel Belocky.  The complaints alleged that

ZDENEK SVOBODA and Pavel Belocky committed the offense of :

> "Aggravated battery in that they, in committing a battery, other than by the discharge of a firearm, knowingly or intentionally made physical contact of an insulting or provoking nature to Richard Osowski, to wit: they struck Richard Osowski about the body, knowing Richard Osowski to be a peace officer, to wit: an officer for the Cook County Water Reclamation District, while Richard Osowski ***was engaged in the execution of his official duties"***

See Exhibit 1, attached (emphasis added).

The charge that Plaintiff committed a battery on Officer OSOWSKI while he was

*"engaged in his official duties"* was approved by the Cook County State's Attorneys Office.

Subsequently, a judge found that there was probable cause to detain Plaintiff on this charge, and

bond was set.  On December 12, 2002, Plaintiff was indicted by the Cook County Grand Jury for

the charge that Plaintiff committed a battery on Officer OSOWSKI while he was *"engaged in his*

*official duties."*  Trial was held on December 12, 2004, and Plaintiff was found not guilty on all

charges.


## I.    AT ALL TIMES RELEVANT TO THE PRESENT COMPLAINT, OFFICER OSOWSKI WAS ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT.

As stated above, Count IV of the present Complaint is a cause of action for respondeat

superior against the DISTRICT.  One element that must be proven for *respondeat superior* is that

at the time of the offense the agent was acting within the scope of employment.

In its Motion, the DISTRICT asserts, *inter alia,*  that Officer OSOWSKI's actions were in

self-defense, and were not within the space and time limits of his employment.  On this basis,

without any meaningful citation or discussion to relevant caselaw, the DISTRICT argues that

Officer OSOWSKI's actions could therefore not be found to be within the scope of his

employment. However, whether officer OSOWSKI was acting in self-defense is a factual issues,

which of course cannot be decided in a Rule 12(b)(6) motion to dismiss.

The DISTRICT's arguments notwithstanding, as explained below, there is a plethora of

controlling caselaw specifically addressing the issue of scope of employment and the acts of an

off-duty police officer to enforce the law and preserve the peace, including use of force by an off-

duty police officer when he encounters *alleged* combative lawbreakers. In the face of Rule 11,

this caselaw was not discussed or even mentioned in the DISTRICT's current Motion.

1.     **There Is Numerous Caselaw on Point Which Holds That an Off-duty Officer's Use of Force Against Alleged Combative Lawbreakers Presents a Triable Issue of Fact Whether Such Action Is Within the Scope of Employment.**

The lead case involving scope of employment and use of an off-duty police officer's weapon is Banks v. City of Chicago, 11 Ill.App.3d 543, 297 N.E.2d 343 (1st Dist. 1973). Banks involved a confrontation between an off-duty police officer and a civilian in a small corridor connecting a restaurant and a tavern. In the corridor, the civilian bumped into the off-duty officer and told the officer to "get out of [his] way." The off-duty officer then pulled out his badge to identify himself as a police officer, and the plaintiff walked away. After that, the plaintiff ran in front of the off-duty officer and pushed a gun into his lip. The officer saw a flash, and thought that the plaintiff had fired. The plaintiff ran. The off-duty officer said, "Halt, Police." The plaintiff then turned around and pointed his gun at the officer, at which time the officer fired his gun at the plaintiff.

On appeal, the City argued against indemnification contending that the off-duty officers' firing of his weapon during an encounter with a dangerous, aggressive, mouthy, drunkard civilian was outside the scope of his employment and done in "self-defense." This argument (which is essentially the same argument currently proffered by the DISTRICT) was squarely rejected by the appellate court, who ruled as follows:

> "[A policeman] is always obligated to attempt to prevent the commission of crime in his presence, any action taken by him toward that end, even in his official off-duty hours, falls within the performance of his duties as a police officer."

Banks, 297 N.E.2d at 349.

Brown v. King, 328 Ill.App.3d 717, 767 N.E.2d 357 (1st Dist. 2001), is also directly contrary to the DISTRICT's present scope-of-employment argument. The plaintiff in Brown was involved in a car accident on Interstate 94. The defendant, an off-duty Cook County deputy sheriff, stopped at the scene, approached the plaintiff, flashed his badge, and then requested license and proof of insurance. When the plaintiff reached into the glove compartment to retrieve his insurance information, Officer King drew his gun. The plaintiff became frightened and began to run away, at which time the off-duty officer shot the plaintiff. The officer was charged and convicted of aggravated battery as a result.

The county alleged that the acts were not within the scope of Officer King's employment because: 1) he was convicted of a criminal offense as a result of the shooting, and 2) I-94 was not

within officer King's jurisdiction. The plaintiff's claims against Officer King were dismissed by the trial court, but the appellate court reversed. The Brown court ruled that a jury could find that Officer King was acting within the scope of his employment based on the allegations that the off-duty officer approached the plaintiff at the scene of a car accident, flashed his badge, asked for license and insurance, and shot the plaintiff.

Another pertinent case is Gaffney v. City of Chicago, 302 Ill.App.3d 41, 706 N.E.2d 914 (1st Dist. 1998). In Gaffney, the plaintiff sued Officer Daniel Crocker and the City of Chicago under respondeat superior. Crocker was a police officer who worked in the "court section" of the department, and his duties were to ensure that officers and witnesses appeared for court. Officer Crocker owned a revolver that he had purchased with his own money. Crocker carried this gun while on-duty, and also took the gun home.

In April 1991, Officer Crocker was off-duty and his gun was in his home in a cabinet that was not locked. Crocker's minor son removed the gun and brought it to a party, where he shot and killed the plaintiff's decedent. The plaintiff sued claiming that Officer Crocker negligently stored his gun. The plaintiff claimed that the alleged negligent storage was in violation of both City rules about gun storage as well as Crocker's training about storing his gun while off-duty, and therefore within the scope of his employment as a City of Chicago police officer.

At trial, witnesses from the Chicago Police Department testified that "properly storing a firearm while off duty was 'part of the duty responsibilities of a police officer'" and "that the Department did discipline officers for the way they handled guns at home, while off duty." Id. at 917-918. The plaintiff was successful at trial, and the jury returned a special interrogatory specifically finding that Officer Crocker was acting within the scope of his employment when he stored his weapon at home while off-duty. The trial judge issued a judgment notwithstanding the verdict, and the plaintiff appealed.

The appellate court reversed and found that the officer's negligent storage of his weapon while at home and off-duty could reasonably be found by the jury to have occurred within the scope of employment. Id. at 923. Notably, the court made this finding even though the storage of the weapon was in violation of the City's rules regarding storage at home.

A district court case, Coles v. City of Chicago, 361 F.Supp.2d 740 (N.D. Ill. 2005), is also pertinent to the case at bar. In Coles, the plaintiff claimed that he was shot by an off-duty police officer during an altercation that took place at a nightclub on New Year's Eve, December 31,

4

2001.  A fight broke out in the club, and the off-duty officer, who was in plain-clothes, walked toward the fight.  Officer Thomas testified that when he came upon the fight, he shouted "Police!" to establish his authority, and to get the patrons and the fight out of the club.  Thomas did not show his badge, did not make any arrests or attempt to, and did not investigate the fight. The City moved for summary judgment claiming that the off-duty officer's actions were not within the scope of his employment.

The district court denied summary judgment. The court found that since the off-duty officer had gone to the front of the club to allegedly restore peace and to tell the fighting patrons to leave, a reasonable jury could find that he was acting within the scope of his employment when he took this action and then shot a person involved in a simple bar fight.

As in the case at bar, Garner v. City of Chicago, 319 Ill.App.3d 255, 744 N.E.2d 867 (1st Dist. 2001), also involved an altercation where an off-duty police officer fired his weapon at a civilian he allegedly thought may harm him. Officer Garner had spent the evening drinking in a tavern with a woman with whom he was having an affair. When they finished drinking, they drove to another location and parked. A civilian approached the officer's car a few times. Eventually, both the off-duty officer and the civilian exited their vehicles carrying their guns. A physical altercation ensued, and Officer Garner was shot and killed.

The City attempted to deny the officer's wife benefits by arguing that the death of Officer Garner arose from an altercation that was outside the scope of his employment. The appellate court soundly rejected this argument. The Garner court recognized that any action taken by an off-duty officer during an encounter with a hostile aggressor and combative lawbreaker is within the scope of a police officer's employment. Id. at 871.

Another notable case is McCloughan v. City of Springfield, 172 F.Supp.2d 1009 (C.D.Ill. 2001). In McCloughan, the plaintiff sued for excessive force alleging that after a car accident in a parking lot, an off-duty police officer used excessive force and beat him. The court held that such actions could be within the scope of employment where the officer stated "police" and apprehended an individual after witnessing an accident.

The holding in Dragovan v. City of Crest Hill, 115 Ill.App.3d 999, 71 Ill.Dec. 534, 451 N.E.2d 22 (1983), is also relevant to this case. In Dragovan, the defendant was a police chief who, in violation of department procedures,  brought home a gun that had been taken from an arrestee. The gun was supposed to have been destroyed pursuant to a court order. The officer's

minor child obtained possession of the gun and shot another child. The court found there was a triable issue of fact whether the officer's actions were within the scope of his employment.

In the present case, it is alleged that a confrontation arose after Officer OSOWSKI asked Pavel Belocky to pick up trash. During the encounter, Officer OSOWSKI both flashed his badge, and orally identified himself as a police officer. The confrontation escalated and turned physical, at which time Officer OSOWSKI pepper-sprayed both Plaintiff and Pavel Belocky and then shot Plaintiff. As a result of the incident, Plaintiff was charged with battery of Officer OSOWSKI while he was engaged in his official duties.

As exhibited above, courts have consistently and repeatedly held that there is a triable issue whether an off-duty officer was acting in the scope of his employment when he takes police action and uses force against alleged lawbreakers. On this basis, the DISTRICT's arguments should be rejected.

**2.      Officer OSOWSKI Took Police Action during the incident with Plaintiff and a Jury Could Therefore Find That Officer OSOWSKI Was Acting Within the Scope of His Employment.**

Plaintiff's Complaint alleges that Officer OSOWSKI observed Pavel Belocky place trash on the ground.  Such act could have been perceived by Officer OSOWSKI  to be a violation of Illinois law and the Chicago Municipal Code against littering. After allegedly observing Pavel Belocky break the law, Officer OSOWSKI claims that he requested that Pavel Belocky pick up the trash. This is clearly an act to enforce the law. Moreover, a jury could conclude that Officer OSOWSKI was motivated, at least in part, by a desire to perform the police duties of instructing someone who allegedly littered and possibly trespassed to pick up his garbage in order to correct an infraction and preserve the cleanliness of the community.

Next, Officer OSOWSKI  showed the Plaintiff his badge which was clipped to his belt, and asserted that he was a police officer. The parties then moved closer to each other.  A physical confrontation ensued during which Officer OSOWSKI pepper-sprayed the Plaintiff and Pavel Belocky. After that, Officer OSOWSKI  removed his duty weapon and shot Plaintiff. Subsequently, Officer OSOWSKI  reported the incident to the Chicago Police, and signed a complaint against the Plaintiff for battery of a police officer while "engaged in his official duties."

Under the present facts, a jury could conclude that Officer OSOWSKI yelled "police" and showed his badge to preserve the peace and attempt to thwart the possible commission of a felony crime: battery of a police officer while performing his official duties. A jury could also infer from the facts that Officer OSOWSKI carried his badge, pepper-spray and gun in the event of any encounters with lawbreakers.

Moreover, Officer OSOWSKI 's response to the alleged littering and hostile aggression of the Plaintiff involved numerous police actions and is *not* the manner in which a non-police officer or normal civilian would respond or could respond. Carrying a badge *is a police action*. Displaying a badge to alleged lawbreakers *is a police action*. Exclaiming "Police!" to alleged lawbreakers *is a police action*. Using pepper-spray to subdue aggressive lawbreakers who are defiant and resistant to the assertion of police authority is *a police action*. Removing a duty weapon from a holster and shooting an alleged lawbreaker is *a police action*. And finally, signing complaints and commencing charges against civilians for battery of a police officer while engaged in official duties is also *a police action*.

At trial, a jury could reasonably conclude that Officer OSOWSKI pepper-sprayed the Plaintiff and shot Plaintiff in order to preserve the peace and prevent the commission of a felony crime, battery of a police officer while engaged in his official duties. If so, *all by itself*, this conclusion could be the basis for a finding that Officer OSOWSKI was acting within the scope of his employment when he attempted to subdue the Plaintiff with pepper-spray and gunshot.

**3.     Officer OSOWSKI's Actions Meet the Three Criterion for Scope of Employment.**

In <u>Gaffney</u>, the court recognized that Illinois adhered to three criteria in the Restatement (Second) which provides that conduct of an employee is within the scope of employment if:

> "(a) it is of the kind he is employed to perform;
>
> (b) it occurs substantially within the authorized time and space limits;
>
> (c) it is actuated, at least in part, by a purpose to serve the master"

<u>Gaffney</u>, 706 N.E.2d 914, 920, citing Restatement (Second) § 228.

The first factor is that the act must be "of the kind" the servant is employed to perform. On this issue, there can be no question. Officer OSOWSKI worked for the DISTRICT as a police officer. One of the main job duties of a police officer is to prevent the commission of a crime, including not only assault and battery, but also public intoxication, littering and

trespassing, and to take action when witnessing a crime. To enforce the law and serve the master, police officers are provided with badges, as wall as pepper-spray and guns for use during encounters with hostile or combative offenders.

The second factor is that the conduct "occurs substantially within the authorized time and space limits." On this issue, the DISTRICT contends that since Officer OSOWSKI was off-duty and allegedly on vacation, the conduct was not within the authorized time limits. Further, the DISTRICT argues that since the conduct did not occur within the jurisdiction of a Water Reclamation Police Officer, which they assert is only within 1 ½ miles of a drainage channel, the conduct was not within the authorized space limits. This argument fails for several reasons.

Significantly, the "time and space limits" component is just *a factor* to be considered in determining scope of employment, and is ***not*** a requirement. In Gaffney v City of Chicago, supra, the court specifically ruled that: "We note initially that although relevant to scope of employment analysis, the fact that conduct occurred outside of the time and space limits is *not* dispositive." Gaffney, 706 N.E.2d at 921.

The DISTRICT contends that its officers are prohibited from carrying firearms when off-duty. However, this fact actually supports a finding that Officer OSOWSKI 's use of his weapon, while off-duty, was within the scope of his employment. In Gaffney, citing the restatement, the court recognized that:

> "[a]lthough the servant has regular hours of employment, he may be upon call at other hours, or, having the custody of land or chattels, he may have continuing duties of care in connection therewith. If so, and if he performs his duties negligently, the employer is responsible."

Id. at 922, citing the Restatement (Second) § 233, Comment c, at 517.

Here, while at home, Officer OSOWSKI had "continuing custody" of his duty weapon. Officer OSOWSKI also had "continuing duties in connection therewith," in that he was not supposed to carry his weapon while off-duty. Thus, any conduct by Officer OSOWSKI while off-duty related to his weapon could be found to be within "the time and space limits" of his employment. See Gaffney, 706 N.E.2d at 922.

It is beyond question that police officers, probably *more than any other job or type of employment,* are often called upon when they are not at work to perform job-related tasks, especially when they encounter lawbreakers or wrongdoers. And, as illustrated by the numerous cases cited above, when they do act and especially when they use a firearm, their actions can be

found by a jury to be within the "time and space" limits of their job, and therefore within the scope of their employment.

The third factor is whether the servant's conduct is "motivated, at least in part, by a purpose to serve the master." At the time of the incident, Officer OSOWSKI was empowered and fortified with numerous accouterments of a law enforcement official that were provided to him by the DISTRICT. Officer OSOWSKI was wearing his badge to show that he was a police officer. In addition, Officer OSOWSKI also carried pepper-spray, along with his duty weapon issued to him by his master – the DISTRICT. A jury could find that a reason why Officer OSOWSKI was wearing his badge and carrying a gun and pepper-spray was for use during any potential encounters with combative attackers or confrontational lawbreakers. Indeed, the badge and gun were issued to Officer OSOWSKI by the DISTRICT for this very reason.

Throughout its motion, the DISTRICT repeatedly argues that Officer OSOWSKI 's acts could not be found to be within the scope of his employment since he was allegedly prohibited from carrying a gun while off-duty. This argument does not withstand scrutiny. In Gaffney supra, the City also argued that since the officer stored his gun in violation of his training and city regulations, such conduct was therefore outside the scope of employment. The City further argued that the motivation to serve the master requirement was not met since the officer admitted that the manner which he stored his gun was to protect his family if needed. These arguments were squarely rejected by the appellate court:

> "[It] can clearly be inferred that one of the reasons Crocker kept the gun and cabinet unlocked was because he might need it in the event of an emergency. It is true that Officer Crocker testified that he also kept the unlocked gun in the unlocked cabinet in order to protect his family. However, this factor in respondeat superior analysis is satisfied so long as the employee is motivated in part by a desire to serve the employer, even if the employee is also motivated by personal considerations. [citation.]

> We note that the fact that Crocker stored the gun in contravention of the Department's recommendations is not determinative that the storage was not within the scope of employment. The Restatement specifically provides that '[a]n act, although forbidden, or done in a forbidden manner, may be within the scope of employment.' Restatement (Second) § 230, at 511. See also Restatement (Second) § 230, Comment b, at 511 ("[a] master cannot direct a servant to accomplish a result and anticipate that he will always use the means which he directs or will refrain from acts which it is natural to expect that servants may do"); Restatement (Second) § 230, Comment b, Illustration 1, at 511 ("P directs his salesman, in selling guns, never to insert a cartridge while exhibiting a gun. A, a salesman, does so. This act is within the scope of employment"). See also Martin v. Central Ohio Transit Authority, 70 Ohio App.3d 83, 590 N.E.2d 411, 417 ("[t]hat an

9

employee was acting in violation of some instruction or rule of an employer is generally held to be of no consequence" in determining whether conduct is within the scope of employment)."

Gaffney, 706 N.E.2d at 923.

Notably, in this case, Plaintiff will probably have an argument at trial that Officer OSOWSKI carried his gun when off-duty in contravention of DISTRICT rules for the same reason that Officer Crocker in Gaffney stored his gun in violation of department regulations: "because he might need it in the event of any emergency." Gaffney, 706 N.E.2d at 923.

It is also significant that the Gaffney court cites as persuasive the Ohio court's holding in Martin v. Central Ohio Transit Authority, 70 Ohio App.3d 83, 590 N.E.2d 411, 417 . In Martin, the Ohio court held that a bus driver was acting within the scope of employment when he pulled out a gun in self-defense even though the transit authority prohibited bus drivers from carrying firearms:

> "An employer cannot avoid or change the principles of *respondeat superior,* included in the scope of employment concept, by sending out a letter prohibiting certain conduct. Employers do not authorize negligence, but negligence could be within the scope of employment. COTA's letter prohibiting the possession of weapons on buses by drivers only reinforces the conclusion that Curtis's actions were expected and foreseeable. Thus, they were within the scope of employment."

Martin, 590 N.E.2d at 418-419.

In the present case, a reasonable jury could infer that the DISTRICT had reason to foresee that an off-duty officer would carry his gun, as evidenced by its rule prohibiting it.  See Gaffney v City of Chicago, 706 N.E.2d 914, citing Hill v. Mitchell, 653 F.Supp. 1194, 1197-98 (E.D.Mich1986) ("holding that foreseeability alone may bring an act within the scope of employment.") In addition, since the "master [the DISTRICT] assumed control" over what Officer OSOWSKI could do with his gun when off-duty, this is additional support for a finding that Officer OSOWSKI 's use of his weapon was regulated by and related to his job, and was within the scope of his employment. Id. at 921. Finally, an argument could be made to a jury that if the DISTRICT wanted to better ensure that its police officers did not carry their weapons while off-duty, it could have mandated that duty weapons not be taken home, and provided on-site storage for the weapons.  It chose not to do so.

**Statute of Limitations**

The DISTRICT also attempts to argue that Plaintiff's complaint should be dismissed

10

based on the statute of limitations. The DISTRICT contends that Plaintiff's claims are subject to the one-year provision of the Tort Immunity Act. However, it is well settled that in Illinois federal 1983 claims are subject to a two-year statute of limitations. In addition, Plaintiff's malicious prosecution claim was filed within one year after the acquittal in the related criminal case, it is therefore timely.

Also, the statute of limitations is an affirmative defense under Rule 8(c) and is not even properly raised in a motion for dismissal under Rule 12(b)(6). See, e.g., United States v. N. Trust Co., 372 F.3d 886, 888 (7th Cir.2004).

**Pendent Jurisdiction**

Finally, in its most meritless argument, the DISTRICT also contends that the Court should not exercise pendent jurisdiction over Plaintiff's malicious prosecution claim. This is just silly. As a result of the incident, Plaintiff was charged with aggravated battery based upon events during the occurrence. The malicious prosecution is obviously related to and part of the occurrence and its direct consequences, pendent jurisdiction is therefore proper.

## CONCLUSION

Wherefore, for all the above reasons, Plaintiff respectfully request that the District's Motion to Dismiss be denied.

Respectfully submitted,

/s/ Lawrence V. Jackowiak
*Counsel for the Plaintiff*

Lawrence V. Jackowiak
Louis J. Meyer
Law Offices of Lawrence V. Jackowiak
20 North Clark Street, Suite 1700
Chicago, Illinois 60602
(312) 795-9595